IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FREEDOM PATH, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-1537-D |
| VS. | § | |
| | § | |
| LOIS G. LERNER, in her personal | § | |
| capacity as former Director, Exempt | § | |
| Organizations Division, Internal Revenue | § | |
| Service, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action by an organization that maintains that it was targeted by the United States of America, the Internal Revenue Service ("IRS"), and a former IRS official for unconstitutional and unlawful treatment based on its conservative political views when it applied for tax-exempt status. Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) largely present preliminary questions—such as personal jurisdiction, standing, and the availability of injunctive and declaratory relief where IRS tax policies and procedures are challenged—although the court must venture to some extent into the merits. For the reasons that follow, the court dismisses the claims against the former IRS official without prejudice for lack of personal jurisdiction, grants in part and denies in part the other defendants' motion to dismiss, and grants plaintiff leave to replead.

I

A

Plaintiff Freedom Path, Inc. ("Freedom Path") sues defendants Lois G. Lerner ("Lerner"), in her personal capacity as former Director of the Exempt Organizations Division of the IRS; unknown named officials of the IRS, in their official and personal capacities as employees of the IRS; the IRS; and the United States of America, alleging that defendants illegally targeted its application for tax-exempt status under 26 U.S.C. § 501(c)(4) based solely on its conservative policy positions; illegally inspected and disclosed its application, in violation of 26 U.S.C. §§ 6103 and 7431; and relied on an unconstitutional "facts and circumstances" test to evaluate its alleged political activities. According to Freedom Path's complaint, its claims arise from an IRS policy of targeting organizations with conservative sounding names or policy positions for heightened scrutiny when considering their applications for tax-exempt status.

Based on a report of the Treasury Inspector General for Tax Administration ("TIGTA"), Freedom Path alleges that, at least as early as February 2010, the IRS began identifying for additional scrutiny applications from organizations whose names included the terms "Tea Party," "Patriots," and "9/12 Project," along with other conservative sounding names.[1] According to Freedom Path's complaint, the IRS later expanded its criteria for

_____

[1]In deciding defendants' Rule 12(b)(6) motions, the court construes the complaint in the light most favorable to Freedom Path, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Freedom Path's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is

heightened scrutiny to include organizations whose policy positions and purposes focused on government spending, government debt or taxes, and educating on the Constitution and Bill of Rights.  At least as early as April 2010, the Acting Manager of the IRS Exempt Organizations Technical Unit was aware of the practice of selective targeting of, and discrimination against, conservative groups seeking tax-exempt status.  This information was soon shared with the Director of the IRS Rulings and Agreement Office, and with defendant Lerner, who was the Director of the Exempt Organizations Division.  To enable IRS team members to more efficiently screen these applications, the IRS identified a series of criteria, internally referred to as a "Be On the Lookout" ("BOLO") list, that included "various local organizations in the Tea Party movement" and "political action type organizations involved in limiting/expanding Government, educating on the Constitution[] and Bill of Rights, social economic reform/movement."  Compl. ¶ 32.  The Exempt Organizations Technical Unit developed written guidelines for use by IRS officials and employees when processing conservative nonprofits' applications.  Based on these guidelines, IRS officials and

---

limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge.  *See, e.g., Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).  When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true.  If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523).

employees requested additional information from conservative nonprofit applicants. These information requests were often delayed almost one full year—sometimes longer—after the organizations initially filed their applications for tax-exempt status, significantly delaying the approval process. In approximately March 2012, IRS officials and employees created a list of questions to be included in requests for additional information from conservative nonprofits, including inappropriate and unconstitutional requests for donor information. Freedom Path alleges that these inappropriate and changing criteria may have led to inconsistent treatment of organizations applying for tax-exempt status and processing delays, potentially causing the organizations' donors and grantors to be reluctant to provide donations or grants, and preventing organizations from receiving certain benefits of tax-exempt status.

Freedom Path was formed in January 2011, and in March 2011 it submitted to the IRS its Application for Exemption as a § 501(c)(4) organization. Freedom Path alleges that the application contained all of the documentation and information necessary for the IRS to make a determination regarding its tax-exempt status; that instead of the prompt review given other organizations seeking tax-exempt status, the IRS made voluminous and probing requests for additional information almost one year after Freedom Path submitted the application; that the IRS requested that Freedom Path disclose the names of its donors and asked a number of other questions that the TIGTA Report later determined were unnecessary to determine tax-exempt status; and that, despite the intrusive nature of the requests, Freedom Path complied and provided comprehensive responses to the IRS's questions.

Freedom Path also avers that, in November 2012, ProPublica, an investigative news organization, requested that the IRS disclose any public records related to Freedom Path. Later that month, the IRS provided ProPublica a copy of Freedom Path's pending Application for Exemption, which eventually became the subject of an article published by ProPublica entitled, "Controversial Dark Money Group Among Five That Told IRS They Would Stay Out of Politics, Then Didn't."  Compl. ¶ 72.

According to Freedom Path's complaint, in February 2013 it received additional requests from the IRS for information concerning Freedom Path's communications and activities.  Freedom Path provided some requested information, but it hesitated to comply fully in light of the IRS's unlawful disclosure of Freedom Path's confidential tax return information to ProPublica.  Freedom Path's counsel and attorneys for other tax-exempt organizations wrote the IRS expressing concern about unlawful disclosures of pending applications for tax-exempt status and unredacted tax returns of certain tax-exempt organizations, and requesting that the IRS take immediate steps to determine how these disclosures had occurred and how to prevent similar disclosures.

Freedom Path alleges that, in April 2013, it received a follow-up request from the IRS for the information it had sought in the February 2013 letter.  The IRS letter stated that, if Freedom Path did not provide the information, its case could be closed, and it could lose the right to seek a declaratory judgment from a court declaring its exempt status.  In June 2013 the IRS notified Freedom Path that it was instituting a new optional expedited process for certain organizations applying for recognition of exemption under § 501(c)(4).  Under this

process, Freedom Path could obtain approval of its pending application if it made certain representations regarding the organization's past, current, and future spending on political activities. Freedom Path alleges that it declined to participate in this optional expedited process because it viewed the required representations as unconstitutionally broad and as an IRS attempt to force Freedom Path to relinquish some of its First Amendment rights.

Freedom Path asserts that, in September 2013, it received a letter from the IRS analyzing Freedom Path's advertising activities and other communications under the IRS "facts and circumstances" test. This test is a method of analysis found in Revenue Ruling 2004-6, and is used to determine whether an organization's communications constitute "issue advocacy" or an expenditure for political campaign intervention under 26 U.S.C. § 527(e)(2). Although the IRS concluded that two of Freedom Path's advertisements constituted campaign activity, it has not yet reached a final determination regarding Freedom Path's exempt-status under § 501(c)(4), nor has it assessed any tax against Freedom Path based on these conclusions or issued any decision regarding whether Freedom Path owes a tax deficiency.

B

Freedom Path brings this action alleging violations of its First and Fifth Amendment rights, the Administrative Procedure Act ("APA"), and the Internal Revenue Code. Lerner moves to dismiss under Rules 12(b)(2) and 12(b)(6), contending that the court lacks personal jurisdiction over her and that Freedom Path has failed to state a claim on which relief can be granted. The IRS and the United States (collectively, the "federal defendants") move to

dismiss counts IV, VI, and VII, in their entirety, and count V, in part, under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted.  They maintain that Freedom Path lacks constitutional standing and that the claims in question are not ripe; that the Anti-Injunction Act, 26 U.S.C. § 7421, and the federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, bar Freedom Path's claims for injunctive and declaratory relief; that Freedom Path's claims for judicial review under the APA fail to state claims on which relief can be granted; and that Freedom Path's claims that they violated the Internal Revenue Code by disclosing Freedom Path's tax return information are barred by sovereign immunity and fail to state a claim on which relief can be granted.  Freedom Path opposes the motions.

## II

The court turns first to Lerner's challenge under Rule 12(b)(2) to the court's exercise of personal jurisdiction over her.

## A

Freedom Path maintains that it has made a prima facie showing of *in personam* jurisdiction based on Lerner's contacts with the state of Texas in connection with the IRS's unconstitutional scheme to target conservative organizations like Freedom Path. Alternatively, Freedom Path requests leave to conduct limited jurisdictional discovery to demonstrate Lerner's contacts with the state of Texas.

B

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The determination whether a federal district court has *in personam* jurisdiction is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted). To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421

(5th Cir. 1993).

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (citations omitted). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 230 (5th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S.Ct. 2846, 2851 (2011)).

> In *International Shoe*, the Supreme Court explained that "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity . . . the continuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."

*Id.* (ellipsis and brackets in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

"When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits.

Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a prima facie case for personal jurisdiction." *Latshaw*, 167 F.3d at 211 (footnotes omitted). This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted. *See Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996) (stating that court credits "nonconclusional factual allegations of the complaint"); *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) (noting that prima facie standard does not require court to credit conclusory allegations).

C

In Freedom Path's complaint, its only allegations related to the court's power to exercise personal jurisdiction over Lerner are that she oversaw the IRS's Office of Exempt Organizations, whose Examinations unit was headquartered in Dallas, Compl. ¶ 13, and that she sent an email to the Director of the Examinations unit, located in Dallas, regarding an audit of an organization not involved in the present case, Compl. Ex. 10 at 4; P. Resp. 3-4. These allegations are insufficient to make a prima facie showing of either specific jurisdiction or general *in personam* jurisdiction over Lerner.

Freedom Path is essentially premising jurisdiction over Lerner solely on her status as a supervisor of an IRS division, a unit of which is headquartered in Dallas. "Courts across the country have recognized that personal jurisdiction cannot be premised solely on a defendant's supervisory status." *McCabe v. Basham*, 450 F.Supp.2d 916, 926 (N.D. Iowa 2006) (collecting cases); *see also Michalik v. Hermann*, 2001 WL 434489, at *3 (E.D. La.

Apr. 26, 2001) (quoting *Nwanze v. Philip Morris, Inc.*, 100 F.Supp.2d 215, 220 (S.D.N.Y. 2000)) ("Mere supervision over a federal agency, 'the reach of which extends into every state, is insufficient to establish a basis for the exercise of personal jurisdiction' over federal officials in their individual capacities.").  Freedom Path has certainly failed to make a prima facie showing of general jurisdiction, that is, that her affiliations with the state of Texas are so continuous and systematic as to render her essentially at home in Texas.  And it has also failed to make a prima facie showing of specific jurisdiction.  Freedom Path does not allege that Lerner took any actions in Texas that are relevant to its complaint or that she directed any actions at Texas.  In fact, Freedom Path does not even allege that Lerner had any personal involvement with its application for tax-exempt status or was even aware of the application.  The fact that a federal official has supervisory responsibilities over an office in the forum state is insufficient to establish personal jurisdiction over that official.  *See, e.g., Hill v. Pugh*, 75 Fed. Appx. 715, 719 (10th Cir. 2003) (holding that district court lacked personal jurisdiction over federal prison officials based on their regional and national supervisory responsibilities over facilities within forum state).

Accordingly, the court holds that Freedom Path has failed to state a prima facie showing that the court can exercise personal jurisdiction over Lerner based either on a theory of general or specific personal jurisdiction.

## D

The court denies Freedom Path's alternative request for limited jurisdictional discovery.  Whether, and to what extent, to permit discovery regarding personal jurisdiction

rests within the court's discretion.  *See Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).

But to be entitled to jurisdictional discovery, "the plaintiff must first make a 'preliminary

showing of jurisdiction.'"  *United Galvanizing Inc. v. Imperial Zinc Corp.*, 2008 WL

4746334, at *11 (S.D. Tex. Oct. 27, 2008) (quoting *Fielding v. Hubert Burda Media, Inc.*,

415 F.3d 419, 429 (5th Cir. 2005)).  For the reasons already explained, the court holds that

Freedom Path has failed to make even a preliminary showing of personal jurisdiction.

Therefore, the court concludes in its discretion that Freedom Path should not be permitted

to conduct jurisdictional discovery, and denies this request.

E

Accordingly, the court grants Lerner's Rule 12(b)(2) motion to dismiss Freedom

Path's action against her for lack of personal jurisdiction, and it dismisses the suit against her

without prejudice by Rule 54(b) final judgment filed today.[2]

III

The court now considers the federal defendants' motion to dismiss Freedom Path's

claims under Rules 12(b)(1) and 12(b)(6).  Before turning to the merits, it briefly sets out the

pertinent standards.

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by

statute, lack the power to adjudicate claims."  *Stockman v. Fed. Election Comm'n*, 138 F.3d

144, 151 (5th Cir. 1998).  A Rule 12(b)(1) motion can mount either a facial or factual

---

[2]The court need not reach Lerner's Rule 12(b)(6) motion, and it expresses no views
on the merits.

challenge.  *See, e.g., Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).  When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true.  If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of the plaintiff's complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and alteration omitted).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* at 678.  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

IV

The federal defendants assert both standing and ripeness challenges to count VII of Freedom Path's complaint, in which it alleges that the IRS acted beyond its statutory power.  Because standing and ripeness impact the court's exercise of subject matter jurisdiction, the court considers them first, although it only reaches the question of standing.[3]

_____

[3]Because the court concludes that Freedom Path does not have constitutional standing to bring the claims in counts VI and VII, it does not reach the question whether Freedom

A

Freedom Path alleges in count VII that the IRS violated the APA and acted beyond its statutory power in adopting and applying the "facts and circumstances" test in Revenue Rulings 2004-6 and 2007-41.  The federal defendants move to dismiss this count on the ground that Freedom Path lacks standing to challenge these revenue rulings.  With respect to Revenue Ruling 2007-41, they maintain that, because the ruling only applies to organizations seeking tax-exempt status under § 501(c)(3), and Freedom Path seeks tax-exempt status under § 501(c)(4), Freedom Path lacks any injury-in-fact, and thus lacks standing.  As for Revenue Ruling 2004-6, the federal defendants contend that Freedom Path lacks standing because it fails to allege that it has suffered any harm from the adoption and application of this ruling.  Although the federal defendants present these grounds only with respect to count VII, the court will also address them in the context of count VI, in which Freedom Path challenges the "facts and circumstances" test in Revenue Rulings 2004-6 and 2007-41 as unconstitutionally void for vagueness, in violation of the Fifth Amendment Due Process Clause.  In sum, Freedom Path alleges in counts VI and VII that the IRS's adoption and application of Revenue Rulings 2007-41 and 2004-6 to analyze whether an organization's communications constitute "issue advocacy" or an expenditure for political campaign intervention are void for vagueness, in violation of the Due Process Clause of the

_____

Path's claims are ripe.  The court notes, however, that there is doctrinal overlap between the injury-in-fact element of constitutional standing and ripeness, particularly in cases seeking pre-enforcement review.  *See Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006).

Fifth Amendment, and are *ultra vires* acts that exceed the IRS's statutory authority.

B

The standing doctrine addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must meet both constitutional and prudential requirements. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). The federal defendants contend that Freedom Path lacks constitutional standing, which requires that a litigant establish three elements: (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendants' actions; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g., Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).[4] To obtain injunctive relief, plaintiffs must be "likely to suffer future injury," *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), and the threat of future injury "must be both real and immediate, not conjectural or hypothetical," *id.* at 102 (internal quotation marks omitted).

---

[4]This tripartite test applies to all plaintiffs in federal court, whether individual or organizational. *See Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999).

C

The court holds that Freedom Path lacks standing to challenge Revenue Ruling 2007-41. Freedom Path does not allege that it seeks or intends to seek tax-exempt status under § 501(c)(3), and it has failed to plead any circumstances under which Revenue Ruling 2007-41 would apply to it. Freedom Path has therefore failed to plead an actual or imminent injury-in-fact stemming from the IRS's adoption or application of Revenue Ruling 2007-41. Nor has it pleaded a basis to satisfy the remaining elements of standing: a causal link between the injury and the IRS's actions, and an injury that will likely be redressed by a favorable decision. The court therefore dismisses counts VI and VII without prejudice for lack of standing to the extent Freedom Path challenges Revenue Ruling 2007-41.

D

The federal defendants also posit that Freedom Path lacks standing to challenge Revenue Ruling 2004-6. They maintain that, although the IRS has already analyzed Freedom Path's communications according to the provisions of the Ruling, the IRS has not yet assessed any tax against Freedom Path as a result, and Freedom Path cannot therefore show that it has suffered an actual injury. The federal defendants contend that Freedom Path must wait to challenge Revenue Ruling 2004-6 in a Tax Court deficiency proceeding after a tax deficiency has been determined or an IRS tax assessment has been made. Freedom Path responds that it has been injured by the IRS's use of Revenue Ruling 2004-6 because the ruling has had a chilling effect on Freedom Path's exercise of its First Amendment rights, directly infringing Freedom Path's speech by inhibiting it from engaging in effective

advocacy and other expressive activities.

"Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754-55 (5th Cir. 2010) (quoting *Hous. Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 618 (5th Cir. 2007)). But "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). It is insufficient for a plaintiff merely to allege that the defendants' conduct "exercise[d] a chilling effect on the exercise of his First Amendment rights." *Meese v. Keene*, 481 U.S. 465, 473 (1987).

Freedom Path's allegations that the IRS's adoption and application of the "facts and circumstances" test has had a chilling effect on its speech are insufficiently specific to plead a plausible injury-in-fact, as required to establish constitutional standing. It has not, for example, identified any speech in which it would have engaged, or any advertisement it would have published were it not for Revenue Ruling 2004-6. Freedom Path has therefore failed to plead a plausible injury-in-fact that is necessary to establish constitutional standing to challenge Revenue Ruling 2004-6.

E

The court dismisses without prejudice counts VI and VII of Freedom Path's complaint for lack of standing.

- 18 -

V

The federal defendants move under Rule 12(b)(1) to dismiss count IV on the grounds

that the Anti-Injunction Act and DJA preclude the court from exercising subject matter

jurisdiction over Freedom Path's claims for declaratory and injunctive relief.[5]

A

In count IV, Freedom Path asserts a claim against unknown named officials of the

IRS, the IRS, and the United States, alleging that defendants' viewpoint-based targeting of

Freedom Path's application for tax-exempt status for heightened scrutiny violated its

constitutional rights, in turn violating the APA.[6]   Contending that it has no adequate

monetary remedy and that it has suffered, and will continue to suffer, irreparable harm,

Freedom Path seeks injunctive relief.

A federal court's jurisdiction to grant certain types of relief is restricted by law.  Two

such laws are the Anti-Injunction Act and the DJA.  The Anti-Injunction Act provides, in

relevant part, that "no suit for the purpose of restraining the assessment or collection of any

tax shall be maintained in any court by any person, whether or not such person is the person

---

[5]The federal defendants move to dismiss counts IV, VI, and VII on this basis. Because the court has dismissed counts VI and VII for lack of standing, it will address the federal defendants' arguments with respect to count IV alone.

[6]Freedom Path contends that count IV is not a claim arising under the APA, but is merely premised on the APA's waiver of sovereign immunity, and arises directly under the First and Fifth Amendments.  *See infra* § VI(A).  The court rejects this reasoning *infra* at § VI(C)(1).  As one reason for doing so, the court notes that count IV is entitled, "Violations of the Administrative Procedure Act."  *Id.*

against whom such tax was assessed." 26 U.S.C. § 7421(a).  The purpose of the Act is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference and to require that the legal right to the disputed sums be determined in a suit for refund." *Smith v. Rich*, 667 F.2d 1228, 1230 (5th Cir. 1982) (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974)) (internal quotation marks omitted).  The Supreme Court has given the Anti-Injunction Act almost literal effect.  *See Bob Jones*, 416 U.S. at 737 (citing *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962)).

Unlike the Anti-Injunction Act, the DJA is not expressly aimed at taxes.  Rather, it authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  Congress has limited the DJA to "case[s] of actual controversy within [a federal court's] jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986[.]"  *Id.*  The exception for cases involving federal taxes is directly related to the Anti-Injunction Act.  When the DJA was adopted in 1934, there was no tax exception.  After plaintiffs began to use the DJA as a means of circumventing the Anti-Injunction Act—obtaining declaratory judgments holding tax statutes unconstitutional to achieve results they could not obtain through injunctions—Congress amended the statute to add the tax exception.  *See "Americans United" Inc. v. Walters*, 477 F.2d 1169, 1175 (D.C. Cir. 1973) (discussing history of tax exception provision of DJA), *rev'd on other grounds sub nom. Alexander v. "Americans*

*United" Inc.*, 416 U.S. 752 (1974).  This link between the two statutes has been confirmed

by a number of circuit courts that have concluded that the scope of the DJA tax exception is

coterminous with the Anti-Injunction Act's prohibition against injunctive relief in cases

involving the assessment or collection of taxes.  *See, e.g., Cohen v. United States*, 650 F.3d

717, 730 (D.C. Cir. 2011) (noting that reading DJA to bar relief otherwise allowed under

Anti-Injunction Act would defy common sense, because such a reading would give a court

jurisdiction to enjoin parties appearing before it, but not to declare their rights); *In re Leckie

Smokeless Coal Co.*, 99 F.3d 573, 583 (4th Cir. 1996) (noting that Anti-Injunction Act and

the tax-exclusion provision of DJA are, "in underlying intent and practical effect,

coextensive"); *Ecclesiastical Order of ISM of AM v. IRS*, 725 F.2d 398, 404-05 (6th Cir.

1984) (same).  Although the Fifth Circuit has not explicitly held that the Anti-Injunction Act

and the DJA tax exception are equivalent in effect, the court has found no examples in this

circuit of cases in which a court has reached a contrary conclusion.  *See, e.g., Cunningham

v. U.S. Comm'r of IRS*, 165 B.R. 599, 605 (N.D. Tex. 1993) (Sanders, C.J.) (noting that DJA

works in tandem with Anti-Injunction Act to prevent disputes over the right to tax or the

merits of an assessment from being heard in the district court unless the tax has first been

paid); *Apache Bend Apartments, Ltd. v. United States*, 702 F. Supp. 1285, 1295 n.9 (N.D.

Tex. 1988) (Mahon, J.) ("Courts have found that the [DJA] and the Anti-Injunction Act are

coterminous."), *aff'd in part, rev'd in part on other grounds sub nom. Apache Bend

Apartments, Ltd. v. U.S. Through IRS*, 987 F.2d 1174 (5th Cir. 1993).  Therefore, the court

will focus on whether the Anti-Injunction Act bars Freedom Path's claims for injunctive

relief, and it will assume that the DJA's reach is coterminous.  *See Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 4 (D.C. Cir. 1979) (focusing analysis on Anti-Injunction Act since reach is coterminous with that of DJA); *Wyo. Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 932-33 (10th Cir. 1996) (same).

B

The federal defendants contend that count IV is precluded by the Anti-Injunction Act because, although Freedom Path frames its challenge to the IRS's policies and procedures in constitutional terms, "the determination of Freedom Path's tax-exempt status—and thus whether it owes federal taxes—remains at the heart of its claims," and thus "unmistakably affects the assessment or collection of taxes."  Ds. Mot. 14.  Freedom Path responds that, because it neither seeks a determination of its tax-exempt status nor to enjoin the collection or assessment of any tax, the Anti-Injunction Act does not bar its claim.

The court concludes that the Anti-Injunction Act does not bar count IV.  In count IV, Freedom Path requests that the court enjoin the IRS from targeting conservative organizations for heightened scrutiny when evaluating their tax-exempt status, and that the court issue declaratory relief that such policies and procedures are unconstitutional.  Freedom Path does not ask the court to decide the merits of its application for tax-exempt status.  Even if Freedom Path receives all the relief it seeks in this lawsuit, its application for § 501(c)(4) tax-exempt status will remain pending.  Although awarding the relief Freedom Path seeks might affect the information that the IRS can gather and use when deciding whether to approve Freedom Path's application for tax-exempt status, it would neither alter the criteria

for obtaining tax-exempt status under § 501(c)(4) nor require the court to decide whether Freedom Path's application should be approved.  Freedom Path does not request that the IRS be precluded from assessing or collecting taxes against it or any other taxpayer.  It instead requests that the IRS be enjoined from implementing unconstitutional standards when deciding whether to approve tax-exempt status.  The court therefore holds that Freedom Path is not seeking in count IV to restrain the assessment or collection of taxes, and that the claim is not barred under the Anti-Injunction Act.

District courts considering challenges to the same IRS practices targeting conservative organizations have reached the same conclusion.  *See Z Street, Inc. v. Koskinen*, ___ F.Supp.2d ___, 2014 WL 2195492, at *7-8 (D.D.C. May 24, 2014); *NorCal Tea Party Patriots v. IRS*, 2014 WL 3547369, at *11 (S.D. Ohio July 17, 2014).  In both *Z Street* and *NorCal*, organizations targeted by the IRS for heightened scrutiny regarding their applications for tax-exempt status brought suits seeking injunctive and declaratory relief for constitutional violations.  The district courts in both cases concluded that the Anti-Injunction Act and DJA tax exception did not bar plaintiffs' claims for declaratory and injunctive relief, because the purpose of the suits was not to restrain the assessment or collection of taxes.  Instead, the lawsuits sought to enjoin the defendants from "subjecting [plaintiffs] to viewpoint discrimination during the application process for tax-exempt status with unnecessary delays and intrusive requests for information."  *NorCal*, 2014 WL 3547369, at *11; *see also Z Street*, 2014 WL 2195492, at *7-8.

Because in count IV Freedom Path does not seek injunctive or declaratory relief that

restrains the assessment or collection of any tax, the federal defendants' motion to dismiss

on the grounds that count IV is barred by the Anti-Injunction Act or the DJA is denied.

## VI

The federal defendants also move to dismiss count IV under Rule 12(b)(6).[7]

## A

The federal defendants maintain that count IV must be dismissed because Freedom

Path does not assert a challenge to final agency action for which there is no other adequate

remedy prior to seeking judicial review, as the APA requires.  They posit that the agency

action of which Freedom Path complains is not a final agency action because the IRS has not

completed the decisionmaking process concerning Freedom Path's application for tax-

exempt status.  The federal defendants also contend that there are other adequate available

remedies through which Freedom Path can assert its APA claims.

Freedom Path responds that count IV is not a claim arising under the APA, but is

instead a claim premised on the APA's waiver of sovereign immunity, arising directly under

the First and Fifth Amendments.  Freedom Path argues that count IV is an independent claim

that does not require final agency action before seeking judicial review.  Alternatively,

Freedom Path contends that count IV does challenge final agency action but is permissible

because Freedom Path has no other adequate remedy at law through which it can assert its

---

[7]The federal defendants move to dismiss counts IV, VI, and VII under Rule 12(b)(6). Because the court has already concluded that Freedom Path lacks standing to bring the claims in counts VI and VII, it will only address the federal defendants' Rule 12(b)(6) motion to the extent addressed to count IV.

claims.

B

To understand the nature of Freedom Path's claim in count IV and whether it is subject to the final agency action requirement of 5 U.S.C. § 704, the court begins by briefly discussing the nature of the APA's waiver of sovereign immunity.

The APA waives the United States' sovereign immunity from certain suits.  5 U.S.C. § 702 provides:

> [a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.  "Congress intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by § 702[.]" *Armendariz-Mata v. U.S. Dep't of Justice*, 82 F.3d 679, 682 (5th Cir. 1996) (citation omitted).  Section 702 waives immunity for two distinct types of claims: (1) claims in which a person suffers legal wrong because of agency action, and judicial review is sought under the general provisions of the APA; and (2) claims in which a person is adversely affected or aggrieved by agency action within the meaning of a relevant statute, which applies where judicial review is sought pursuant to a statutory or non-statutory cause of action that arises completely apart from the general provisions of the APA.  *See Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014); *Sheehan v. Army & Air Force Exch.*

*Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980), *rev'd on other grounds*, 456 U.S. 728 (1982); *see also Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 187 (D.C. Cir. 2006).

The first type of claims—claims brought pursuant to the general provisions of the APA—is subject to the finality requirements of § 704, meaning that to state a claim for relief, the plaintiff must challenge a "final agency action." *Ala.-Coushatta*, 757 F.3d at 489; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When . . . review is sought . . . under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"). For the second type of claims—claims brought pursuant to a statutory or non-statutory cause of action that arises completely apart from the general provisions of the APA—there is no requirement of "finality" for the § 702 waiver of sovereign immunity to apply. *Ala.-Coushatta*, 757 F.3d at 489 (citing *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000); *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999)). Instead, a plaintiff need only allege that there has been some "agency action," as defined in 5 U.S.C. § 551(13), and that it has "suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute." *Id.* (quoting *Lujan*, 497 U.S. at 882) (internal quotation marks omitted).

Freedom Path contends that count IV of its complaint is the second type of claim permitted by the waiver of sovereign immunity in § 702—a claim to remedy a constitutional injury that, although permitted by § 702's sovereign immunity waiver, is an independent cause of action arising directly from the First and Fifth Amendments, and that does not

require final agency action before the court can conduct judicial review. The federal defendants maintain that Freedom Path's claim in count IV arises under the general provisions of the APA. In support, the federal defendants point to allegations in Freedom Path's complaint that certain events "constitute final agency actions," and that seek relief in the form of a declaration that defendants violated the APA.

C

1

Count IV of Freedom Path's complaint is entitled, "Violations of the Administrative Procedure Act." Compl. at 47. Freedom Path alleges that the APA

> provides a cause of action for persons aggrieved by final actions of an agency of the United States, or officers thereof while acting in an official capacity, that have been unlawfully withheld or unreasonably delayed, as well as agency actions, findings, and conclusions that are contrary to constitutional right, power, privilege, or immunity.

*Id.* at ¶ 152. This language is taken directly from § 706 of the APA, which permits courts reviewing agency action to hold unlawful and set aside certain agency actions. 5 U.S.C. § 706. Based on the caption of count IV and the allegation that this claim is a cause of action authorized by the APA, the court concludes that Freedom Path's claim in count IV is brought "solely pursuant to the general provisions of the APA and specifically section 706." *Ala.- Coushatta*, 757 F.3d at 489. Therefore, count IV is a claim arising under the general provisions of the APA, and to state a claim on which relief can be granted, the claim must challenge final agency action, as § 704 requires.

Freedom Path relies on *Z Street* to contend that the claim is not subject to the final agency requirement in § 704. But *Z Street* is distinguishable. The *Z Street* court addressed a challenge to IRS's procedures that arose directly out of the First Amendment, and the plaintiffs clearly pleaded such a claim. *See Z Street*, 2014 WL 2195492, at *11 ("Z Street seeks to proceed with an action for declaratory and injunctive relief that arises directly out of the First Amendment."). Freedom Path has challenged, however, the IRS's procedures through the cause of action that § 706 provides. Its reliance on *Z Street* is thus misplaced.

2

The court now considers whether Freedom Path is challenging final agency actions in count IV, as § 704 requires.

For an agency action to be final, two conditions must be satisfied: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citation omitted). "In evaluating whether a challenged agency action meets these two conditions, this court is guided by the Supreme Court's interpretation of the APA's finality requirement as 'flexible' and 'pragmatic.'" *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967)).

In count IV, Freedom Path challenges as unconstitutional the IRS's use of certain policies and procedures to target conservative organizations for heightened review of

applications for tax-exempt status.  Although the IRS's adherence to these policies and procedures may ultimately culminate in a final decision regarding Freedom Path's tax-exempt status, the use of these policies and procedures neither marks the consummation of the IRS's decisionmaking process nor determines Freedom Path's rights or obligations or precipitates legal consequences.  Therefore, the policies and procedures that Freedom Path challenges in count IV do not constitute final agency actions, as § 704 requires to state a claim for relief under the APA.  Because Freedom Path's claims in count IV arise under the APA's general provisions and do not challenge final agency action, the court concludes that count IV does not state a claim on which relief can be granted, and it grants the federal defendants' motion to dismiss count IV under Rule 12(b)(6).

VII

The federal defendants move to dismiss part of count V, in which Freedom Path alleges that the federal defendants violated 26 U.S.C. § 6103, which requires that tax "returns and return information shall be confidential."[8]

The documents the IRS "receives or creates during the initial investigation of an

---

[8]The federal defendants move to dismiss under Rules 12(b)(1) and 12(b)(6).  The questions presented in the Rule 12(b)(1) motion, however, are also questions that reach the merits of Freedom Path's claims under 26 U.S.C. § 7431.  "Where . . . defendant[s'] challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. May 1981).  The court therefore construes the federal defendants' motion to dismiss as one under Rule 12(b)(6) for failure to state a claim.

organization seeking tax-exempt status constitute 'return information' within the meaning of § 6103." *Lehrfeld v. Richardson*, 132 F.3d 1463, 1467 (D.C. Cir. 1998).  Under 26 U.S.C. § 7431,[9] a taxpayer can assert a private cause of action against the federal government for a violation of § 6103.  To state such a claim, a plaintiff must allege "(1) that the IRS disclosed confidential tax return information either knowingly or negligently, and (2) that this disclosure was not authorized by section 6103 of the Internal Revenue Code." *Wilkerson v. United States*, 67 F.3d 112, 115 (5th Cir. 1995).

In count V, Freedom Path alleges that the federal defendants violated § 6103, first, by releasing to ProPublica a copy of its pending Application for Exemption, and, second, by performing unauthorized inspections of tax return information produced by Freedom Path in response to the IRS's requests for additional information, and by unspecified additional unauthorized disclosures.  The federal defendants move to dismiss only the second category of allegations.  They contend that Freedom Path fails to state sufficiently detailed factual allegations to raise a right to relief above the speculative level, and that § 7431 does not authorize a claim for inspection of information that Freedom Path submitted to the IRS voluntarily.

---

[9] 26 U.S.C. § 7431 provides:

> If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

The court need only consider the federal defendants' first argument.  Freedom Path's only allegations regarding unlawful disclosure and inspection—other than the disclosure of its Application for Exemption to ProPublica—are that "various employees and officials within the Department of Treasury inspected and/or disclosed the information produced by [Freedom Path] in response to the IRS's requests for additional information."  Compl. ¶ 68.  Freedom Path does not identify what information was allegedly revealed or inspected, to whom or by whom the inspections and disclosures were made, and under what circumstances they occurred, nor does Freedom Path explain how these inspections or disclosures violated § 6103.  These allegations are no more than "threadbare recitals of a cause of action's elements supported by mere conclusory statements," and, as such, are insufficient to withstand the federal defendants' motion to dismiss.  *Iqbal*, 556 U.S. at 678.  The court therefore concludes that Freedom Path has failed to state a plausible claim for relief under § 6103 (actionable under § 7431) with respect to the unidentified inspections and disclosures.  The court grants the federal defendants' motion to dismiss count V in part.

## VIII

The court will permit Freedom Path to replead.  *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).  Although the defects in Freedom Path's challenges in counts IV and VII to Revenue Ruling 2007-41

appear to be incurable, Freedom Path alleges other claims that appear to be plausible if adequately pleaded.  Because Freedom Path has not stated that it cannot, or is unwilling to, cure the defects that the court has identified, the court grants Freedom Path 28 days from the date of this memorandum opinion and order to file an amended complaint.

*   *   *

For the reasons explained, the court grants Lerner's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction, and it dismisses Freedom Path's action against her without prejudice by Rule 54(b) final judgment filed today.  The court grants in part and denies in part the federal defendants' motion to dismiss, and it grants Freedom Path leave to replead.

**SO ORDERED.**

February 24, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE