IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FREEDOM PATH, INC.,                     §
                                        §
                    Plaintiff,          §
                                        §  Civil Action No. 3:14-CV-1537-D
VS.                                     §
                                        §
LOIS G. LERNER, in her personal         §
capacity as former Director, Exempt     §
Organizations Division, Internal Revenue §
Service, et al.,                        §
                                        §
                    Defendants.         §

MEMORANDUM OPINION
AND ORDER

This is an action by plaintiff Freedom Path, Inc. ("Freedom Path"), an organization

that maintains that, when it applied for tax-exempt status, it was targeted by defendants

United States of America ("United States"), the Internal Revenue Service ("IRS"), and

unknown IRS officials for unconstitutional and unlawful treatment based on its conservative

political views.  The United States and the IRS (collectively, "the federal defendants") move

to dismiss all but one of Freedom Path's claims, contending that Freedom Path lacks

standing and that it cannot obtain declaratory or injunctive relief.  For the reasons that follow,

the court grants the motion in part and denies it in part.

I

The court has addressed the background facts and procedural history of this case in

a prior memorandum opinion and order, *Freedom Path, Inc. v. Lerner*, 2015 WL 770254, at

*1-2 (N.D. Tex. Feb. 24, 2015) (Fitzwater, J.) ("*Freedom Path I*"), and will therefore recount

only the background facts and procedural history that are pertinent to the instant motion.

Based on a report of the Treasury Inspector General for Tax Administration ("TIGTA"), Freedom Path alleges that, at least as early as February 2010, the IRS began targeting for heightened scrutiny applications for tax-exempt status by organizations whose names included the terms "Tea Party," "Patriots," and "9/12 Project," along with other conservative sounding names.[1]   According to Freedom Path, to effectively screen these applications, the IRS identified a series of criteria, internally called "Be On The Lookout," or "BOLO" lists.  Freedom Path also alleges that IRS officials and employees requested additional information—including inappropriate and unconstitutional requests for donor information—from conservative nonprofit applicants, and that many of these requests were delayed for one year or more after the applications were filed.  The targeting and heightened scrutiny of applications of conservative nonprofit groups and the accompanying delays in

---

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes Freedom Path's second amended complaint in the light most favorable to Freedom Path, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Freedom Path's favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge.  *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).  When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523).

processing such applications have caused reluctance in potential donors and grantors and deprivation of other benefits of tax-exempt status.

Freedom Path filed its Application for Exemption as a § 501(c)(4) organization in March 2011. Freedom Path asserts that although its application contained all the necessary information for the IRS to make a determination of its tax-exempt status, the IRS in several letters made voluminous and probing requests for information almost one year after Freedom Path submitted its application. In September 2013 Freedom Path received a letter from the IRS analyzing Freedom Path's advertising activities and communications under the IRS "facts and circumstances" test, which is found in Revenue Ruling 2004-6 and is used to determine whether an organization's communications constitute "issue advocacy" or an expenditure for political campaign intervention under 26 U.S.C. § 527(e)(2). The IRS determined that two of Freedom Path's advertisements constituted campaign activity, but the IRS has neither issued a final determination of Freedom Path's tax-exempt status under § 501(c)(4) nor determined that Freedom Path owes any tax.

In *Freedom Path I* the court dismissed Freedom Path's claims against Lois Lerner ("Lerner"), an IRS official, for lack of personal jurisdiction; dismissed for lack of standing Freedom Path's challenge to Revenue Ruling 2004-6 brought against the federal defendants; dismissed Freedom Path's challenge to the federal defendants' policies and procedures for lack of final agency action; and dismissed Freedom Path's claims against the federal defendants based on alleged violations of 26 U.S.C. § 6103 as insufficiently pleaded. The court permitted Freedom Path to replead.

- 3 -

Freedom Path has filed a second amended complaint in which it brings claims against the federal defendants for alleged violations of Freedom Path's rights under the First and Fifth Amendments, 26 U.S.C. § 6103, and the Administrative Procedures Act, 5 U.S.C. § 702 ("APA"), and a *Bivens*[2] action against unnamed IRS officials for alleged violations of Freedom Path's First and Fifth Amendment rights. The federal defendants move anew under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss all of Freedom Path's claims, except for its claims under 26 U.S.C. § 6103. The court has heard oral argument.

## II

The court first considers the federal defendants' motion to dismiss Freedom Path's claims under Rules 12(b)(1) and 12(b)(6). Before turning to the merits, it sets out the pertinent standards.

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.,* 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C .J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations

---

[2]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

in the pleading and assumes them to be true.  If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson,* 644 F.2d at 523).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of the plaintiff's complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.,* 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and alteration omitted).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556); *see also Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

- 5 -

alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* at 678.  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III

The federal defendants move to dismiss count IV of Freedom Path's complaint as moot.  In count IV, Freedom Path alleges that the federal defendants violated its First Amendment rights by subjecting it and its application for tax-exemption to heightened scrutiny, targeting, and improper, inappropriate, and unconstitutional requests for information.  Because mootness impacts the court's exercise of subject matter jurisdiction, the court considers it as a threshold question.

## A

The Constitution limits the exercise of judicial power to cases and controversies.  U.S. Const. art. III § 2; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239 (1937).  A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  Even when a case

presented a live controversy when it was filed, a court may not decide it if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990).

Freedom Path alleges that the federal defendants have denied its rights guaranteed by the First Amendment by targeting its application for tax-exemption and subjecting it to heightened scrutiny because of Freedom Path's conservative viewpoint. Freedom Path points to the federal defendants' "policy and practice of submitting [to Freedom Path] the unconstitutionally and overly intrusive requests for information" that caused an unreasonable delay in the determination of Freedom Path's tax-exempt status. 2d Am. Compl. ¶ 161.

The federal defendants contend that the conduct complained of in count IV has been remedied, and that Freedom Path's claims are therefore moot. According to the federal defendants, the IRS no longer engages in heightened scrutiny nor issues improper requests for information. They cite a 2015 TIGTA report entitled, "Status of Actions Taken to Improve the Processing of Tax-Exempt Applications Involving Political Campaign Intervention" ("2015 TIGTA Report"), which concludes that the IRS has taken steps to "eliminate the selection of potential political cases based on names and policy positions" and to "eliminate unnecessary information requests." Ds. App. 9. The federal defendants posit that the 2015 TIGTA Report demonstrates that the IRS no longer uses "BOLO" lists or screens for names like "Tea Party," "Patriots," or "9/12 Project" in reviewing tax-exempt applications. The federal defendants also maintain that the IRS has changed its procedures

for seeking additional information from tax-exemption applicants and has trained its employees regarding "the type of additional information that should be requested and the appropriate wording of questions in additional information request letters." Ds. App. 14-15. They argue that Freedom Path's claim in count IV is moot, just as the similarly-situated plaintiffs' claims in *Linchpins of Liberty v. United States*, 71 F.Supp.3d 236, 244-47 (D.D.C. 2014), *appeal docketed*, No. 15-5013 (D.C. Cir. Jan. 21, 2015), and *True the Vote, Inc. v. IRS*, 71 F.Supp.3d 219, 227-29 (D.D.C. 2014), *appeal docketed*, No. 14-5316 (D.C. Cir. Dec. 19, 2014).

Freedom Path responds that the conduct it complains of in count IV is not limited to the IRS's use of BOLO lists and requests for improper information, but that it includes all of the IRS's offending policies, including the application of the "facts and circumstances" test of Revenue Ruling 2004-6. Freedom Path does not expressly dispute the IRS's claimed change in policies with respect to BOLO lists and requests for information, but it argues that its claim is not moot simply because the IRS voluntarily ceased the complained-of conduct.

The federal defendants reply that Freedom Path does not expressly complain of the IRS's application of Revenue Ruling 2004-6 in count IV, and that no exception to the mootness doctrine applies.

B

Count IV is not based only on the IRS's use of BOLO lists. In fact, Freedom Path does not mention BOLO lists in count IV. Instead, Freedom Path complains that its application for tax-exemption has been unconstitutionally targeted and subjected to

heightened scrutiny.   Freedom Path also alleges that the IRS sent it inappropriate and unconstitutional requests for information.

Although the federal defendants have adduced some evidence that the IRS no longer uses BOLO lists and that the IRS has made efforts to train its employees on how to issue proper information requests, Freedom Path has demonstrated that its general complaints of unconstitutional targeting, heightened scrutiny, and improper requests for information still present a live controversy.

The cases on which the federal defendants rely—*True the Vote* and *Linchpins of Liberty*—were decided under distinguishable facts.   In *True the Vote* the court held that the plaintiff's allegations of unconstitutional targeting and heightened scrutiny were moot because the IRS had granted the plaintiff tax-exempt status.   *True the Vote*, 71 F.Supp.3d at 219, 226-27.   Accordingly, the plaintiff's injury claim was moot.   *Id.* (holding that because plaintiff's application for tax-exempt status was approved, "[t]he allegedly unconstitutional governmental conduct, which delayed the processing of the plaintiff's tax-exempt application and brought about this litigation, is no longer impacting the plaintiff."). In *Linchpins of Liberty* the plaintiff specifically complained of the use of BOLO lists, but it also alleged that the IRS was no longer using the lists.   *Linchpins of Liberty*, 71 F.Supp.3d at 236, 245 & 245 n.12.   The termination of the complained-of conduct (the use of BOLO lists) therefore rendered the claim moot.   *Id.*   In contrast, Freedom Path's allegations in count IV are not limited to the use of BOLO lists, it has not pleaded that the BOLO lists are no longer in use, and its application for tax-exempt status has not been granted.   The allegations of count IV

are not moot.

## IV

The federal defendants also assert a standing challenge to counts IV, VI, VII, and VIII of Freedom Path's second amended complaint.

## A

The standing doctrine addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must meet both constitutional and prudential requirements. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). The federal defendants contend that Freedom Path lacks constitutional standing, which requires that a litigant establish three elements: (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendants' actions; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g., Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). To obtain injunctive relief, plaintiff must be "likely to suffer future injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). And the threat of future injury "must be both real and immediate, not conjectural or hypothetical," *id.* at 102 (internal quotation marks omitted).

- 10 -

B

The federal defendants maintain that Freedom Path lacks standing to bring the claims asserted in counts IV, VI, VII, and VIII because it has not alleged impending, future injury that is real and immediate rather than conjectural or hypothetical.  According to the federal defendants, Freedom Path alleges that the IRS's application of Revenue Ruling 2004-6 harmed it in two ways: (1) Freedom Path altered the script for an advertisement (the "Leader advertisement") aired in early 2012; and (2) Freedom Path's application for tax-exemption was not timely approved.  The federal defendants contend that any injury related to the Leader advertisement is in the past, and that Revenue Ruling 2004-6 is used to determine whether a tax-exempt entity has taxable income, not whether the entity is tax-exempt. Accordingly, the federal defendants maintain that neither alleged injury demonstrates a future harm.

Freedom Path responds that it primarily complains of injury from the "multi-pronged offensive" and "larger pattern" of viewpoint discrimination in the application of Revenue Ruling 2004-6.  It cites *Z Street, Inc. v. Koskinen*, 44 F.Supp.3d 48 (D.D.C. 2014), *aff'd*, 791 F.3d 24 (D.C. Cir. June 19, 2015), to demonstrate that it has no other recourse against defendants for their illegal scheme.  According to Freedom Path, if the federal defendants' standing argument is accepted, Freedom Path will only be able to challenge the "facts and circumstances" test of Revenue Ruling 2004-6 if the IRS denies it tax-exempt status or assesses a tax against it for exempt function activity.  Freedom Path alleges that while it awaits the determination of its tax-exempt status, it must "continue curtailing similar speech

[to the Leader advertisement] in the future."  2d Am. Compl. ¶ 188.

The federal defendants reply that Freedom Path's allegation of the future curtailment of speech similar to the Leader advertisement is too speculative and amorphous to give rise to standing.

C

"Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement."  *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754-55 (5th Cir. 2010) (quoting *Hous. Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 618 (5th Cir. 2007)).  But "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."  *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

In *Freedom Path I* the court dismissed Freedom Path's challenges based on Revenue Ruling 2004-6 because Freedom Path had not "identified any speech in which it would have engaged, or any advertisement it would have published were it not for Revenue Ruling 2004-6."  *Freedom Path I*, 2015 WL 770254, at *8.  In its second amended complaint, Freedom Path alleges that it would have aired the Leader advertisement as originally written were it not for Revenue Ruling 2004-6 and the uncertainty of the IRS's application of it to Freedom Path's activities.  Freedom Path avers that in the future it will curtail speech similar to the Leader advertisement because of Revenue Ruling 2004-6 and its application.[3]  Freedom Path

---

[3]The federal defendants argue that Freedom Path's future speech will not be curtailed because Freedom Path has aired advertisements similar to the Leader advertisement despite

also alleges that it has stopped raising funds and undertaking its advocacy efforts due to the uncertainty of how the IRS will apply Revenue Ruling 2004-6 to Freedom Path and its activities in the future.

Freedom Path has sufficiently pleaded future harm to establish injury in fact. *See, e.g., Meese v. Keene*, 481 U.S. 465, 472-74 (1987) (plaintiff's allegation that future speech would be labeled "political propaganda" sufficiently pleaded future harm to establish injury in fact). It alleges that it will curtail its publication of advertisements similar to the Leader advertisement and that it has ceased raising funds and undertaking advocacy work because of uncertainty about how the IRS will apply Revenue Ruling 2004-6. The court denies the federal defendants' motion to dismiss counts IV, VI, VII, and VIII based on alleged lack of standing.

V

The court turns next to the federal defendants' motion under Rule 12(b)(6) to dismiss count VII, which asserts a claim under the APA. The federal defendants move to dismiss count VII, contending that Freedom Path does not seek review of a final agency action, as required by 5 U.S.C. § 704. Freedom Path responds that it is complaining of *ultra vires* acts by the federal defendants, and that review is therefore available without final agency action.

In *Freedom Path I* the court dismissed Freedom Path's claim for relief under the APA because it arose under the APA's general provisions, 5 U.S.C. § 702, and did not challenge

---

the IRS's application of Revenue Ruling 2004-6. This argument goes not to the sufficiency of the pleadings but to the merits of Freedom Path's claims.

final agency action, as required by § 704. Freedom Path's allegations under the APA in its second amended complaint are substantially similar to those alleged in its first amended complaint. Accordingly, Freedom Path's claims in count VII, which arise under the APA and do not arise as independent causes of action, do not challenge a final agency action and are therefore dismissed under Rule 12(b)(6). *See Freedom Path I*, 2015 WL 770254, at *12-13.

VI

The federal defendants move under Rule 12(b)(1) to dismiss counts IV, VI, and VIII on the grounds that the Anti-Injunction Act ("AIA") and Declaratory Judgment Act ("DJA") preclude the court from exercising subject matter jurisdiction over Freedom Path's claims for declaratory and injunctive relief.[4]

A

A federal court's jurisdiction to grant certain types of relief is restricted by law. Two such laws are the AIA and the DJA. The AIA provides, in relevant part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The purpose of the AIA is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum

---

[4]The federal defendants also move to dismiss count VII on this basis. Because the court has dismissed count VII under Rule 12(b)(6), it will address the federal defendants' arguments with respect to counts IV, VI, and VIII only.

of pre-enforcement judicial interference and to require that the legal right to the disputed sums be determined in a suit for refund." *Smith v. Rich*, 667 F.2d 1228, 1230 (5th Cir. 1982) (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974)) (internal quotation marks omitted). The Supreme Court has given the AIA almost literal effect. *See Bob Jones Univ.*, 416 U.S. at 737 (citing *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962)).

Unlike the AIA, the DJA is not expressly aimed at the assessment and collection of taxes. Rather, the DJA authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Congress has limited the DJA to "case[s] of actual controversy within [a federal court's] jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986[.]" *Id.* The exception for cases involving federal taxes is directly related to the AIA. When the DJA was adopted in 1934, there was no tax exception. After plaintiffs began using the DJA as a means of circumventing the AIA—obtaining declaratory judgments holding tax statutes unconstitutional to achieve results they could not obtain through injunctions—Congress amended the statute to add the tax exception. *See Ams. United Inc. v. Walters*, 477 F.2d 1169, 1175 (D.C. Cir. 1973) (discussing history of tax exception provision of DJA), *rev'd on other grounds sub nom. Alexander v. Ams. United Inc.*, 416 U.S. 752 (1974). This link between the two statutes has been confirmed by a number of circuit courts that have concluded that the scope of the DJA tax exception is coterminous with the AIA's prohibition

- 15 -

against injunctive relief in cases involving the assessment or collection of taxes. *See, e.g., Cohen v. United States*, 650 F.3d 717, 730 (D.C. Cir. 2011) (noting that reading DJA to bar relief otherwise allowed under AIA would defy common sense, because such a reading would give a court jurisdiction to enjoin parties appearing before it, but not to declare their rights); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 583 (4th Cir. 1996) (noting that AIA and the tax-exclusion provision of DJA are, "in underlying intent and practical effect, coextensive"); *Ecclesiastical Order of ISM of AM v. IRS*, 725 F.2d 398, 404-05 (6th Cir. 1984) (same).  Although the Fifth Circuit has not explicitly held that the AIA and the DJA tax exception are equivalent in effect, the court has found no examples in this circuit of cases in which a court has reached a contrary conclusion. *See, e.g., Cunningham v. U.S. Comm'r of IRS*, 165 B.R. 599, 605 (N.D. Tex. 1993) (Sanders, C.J.) (noting that DJA works in tandem with AIA to prevent disputes over the right to tax or the merits of an assessment from being heard in the district court unless the tax has first been paid); *Apache Bend Apartments, Ltd. v. United States*, 702 F. Supp. 1285, 1295 n.9 (N.D. Tex. 1988) (Mahon, J.) ("Courts have found that the [DJA] and the [AIA] are coterminous,"), *aff'd in part, rev'd in part on other grounds sub nom. Apache Bend Apartments, Ltd. v. U.S. Through IRS*, 987 F.2d 1174 (5th Cir. 1993).  Therefore, the court will focus on whether the AIA bars Freedom Path's claims for injunctive relief, and it will assume that the DJA's reach is coterminous. *See Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 4 (D.C. Cir. 1979) (focusing analysis on AIA since its reach is coterminous with that of the DJA); *Wyo. Trucking Ass'n v. Bentsen*, 82 F.3d 930, 932-33 (10th Cir. 1996) (same).

- 16 -

B

The federal defendants argue that Freedom Path's requests for declaratory and injunctive relief in counts IV, VI, and VIII are barred by the AIA and the DJA. Acknowledging that in *Freedom Path I* the court rejected the same argument with respect to count IV, the federal defendants re-urge their argument to preserve it. With respect to counts VI, VII, and VIII, the federal defendants maintain that Freedom Path's challenges to Revenue Ruling 2004-6 should be dismissed because "[a]ny injunctive relief as to [] Revenue Ruling [2004-6] necessarily interferes with tax assessment and collection," which is prohibited by the AIA and the DJA.

Freedom Path responds that it is not asking the court to interfere with, and that it does not challenge, the determination of its tax-exempt status or any tax assessment or collection; rather, it posits that it seeks "relief from the IRS's processes and procedures applied to . . . [Freedom Path's] Application for Exemption." P. Resp. Br. 23. Freedom Path emphasizes that total relief on its claims will not determine its application for exemption or whether a tax will be assessed or collected. Rather, if Freedom Path is awarded the relief it seeks, it will be assured that the government will analyze Freedom Path's activities under constitutional standards.

In *Freedom Path I* the court concluded that Freedom Path's request that the court enjoin the IRS from targeting conservative organizations for heightened scrutiny, and its request for declaratory relief that such discriminatory policies are unconstitutional, did not implicate the assessment or collection of taxes and were not barred under the AIA or the

- 17 -

DJA. *Freedom Path I*, 2015 WL 770254, at *10-11. The court noted that Freedom Path's requested injunctive and declaratory relief "would not alter the criteria for obtaining tax-exempt status under 501(c)(4)," and it cited two district court cases in support: *Z Street, Inc. v. Koskinen*, 44 F.Supp.3d 48, 63-64 (D.D.C. May 24, 2014), *aff'd*, 791 F.3d 24 (D.C. Cir. 2015), and *NorCal Tea Party Patriots v. IRS*, 2014 WL 3547369, at *11 (S.D. Ohio July 17, 2014).[5] In *Freedom Path I*, however, the court did not decide whether Freedom Path's challenges to the application of the "facts and circumstances" test of Revenue Ruling 2004-6 (as alleged in counts VI, VII, and VIII) ultimately sought to restrain the assessment or collection of taxes.

Freedom Path's requested relief, if granted, would not have the effect of restraining the assessment or collection of taxes. Freedom Path does not seek to challenge the determination of its tax-exempt status or to challenge any assessed tax or tax deficiency; rather, Freedom Path seeks declaratory and injunctive relief to ensure that the federal defendants will decide Freedom Path's tax exempt status based on consideration of constitutionally sound factors. Freedom Path seeks declaratory and injunctive relief prohibiting the federal defendants from using the allegedly unconstitutional "facts and circumstances" test of Revenue Ruling 2004-6. Accordingly, the court denies the federal

---

[5]Plaintiffs in both cases sought to enjoin defendants from subjecting them to viewpoint discrimination in determining their tax-exemption status, and the courts in both cases concluded that plaintiffs' claims for declaratory and injunctive relief were not barred by the AIA or the DJA. *Z Street*, 44 F.Supp.3d at 63; *NorCal Tea Party Patriots*, 2014 WL 3547369, at *11.

defendants' motion to dismiss counts IV, VI, and VIII on the ground that the AIA and the DJA preclude the court from exercising subject matter jurisdiction.

## VII

The federal defendants move to dismiss Freedom Path's claims asserted in counts I, II, and III against unnamed IRS officials in their official capacities. According to the federal defendants, Freedom Path should have named any specific defendants it wished to assert claims against, and the court lacks personal jurisdiction over any other IRS officials who might be named, as it did with IRS official Lerner. *See Freedom Path I*, 2015 WL 770254, at *3-5.

Freedom Path has not responded to the federal defendants' arguments regarding its claims in counts I, II, and III. At oral argument, Freedom Path conceded that it intended to abandon these claims. Accordingly, the court dismisses counts I, II, and III without prejudice.

\*   \*   \*

For the foregoing reasons, the court grants in part and denies in part the federal defendants' motion to dismiss.

**SO ORDERED**.

May 25, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 19 -